UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br><br>GAIL J. HUPPER and WILLIAM H. WOOD, )<br>Individually and on Behalf of all Persons )<br>Similarly Situated, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>JAGUAR LAND ROVER NORTH )<br>AMERICA, LLC, )<br> )<br>Defendant. )<br>_____ ) | Civil Action No. |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, Gail J. Hupper and William H. Wood, individually and on behalf of all others similarly situated, hereby file this class action complaint against Jaguar Land Rover North America, LLC and allege and aver as follows on personal knowledge, investigation or information and belief.

## I.  INTRODUCTION

1.      This case arises from the surreptitious collection of consumers' driver behavior and other personal data through computer software installed in automobile vehicles manufactured, marketed, leased and/or sold by Defendant and, upon information and belief, the sharing and/or sale of that data without notice to, knowledge of, or consent by consumers.

2.      Modern vehicles are as much electronic and digital products as they are mechanical ones. From engines, to transmissions, to suspension systems, ever more functions in vehicles are being operated by, or at least integrated with, electronics and software.

3.      Among the more modern vehicle innovations is the integration of digital software that captures a variety of metrics about a vehicle's condition and performance, such as fuel levels or distances traveled. But less overt metrics are captured as well. This includes, without limitation, average speed, the frequency and intensity of acceleration and braking, late night driving and more, all of which is all capable of being digitally recorded, stored, and viewed through vehicle software and applications.

4.      Defendant Jaguar Land Rover North America, LLC ("JLR" or "Defendant") installs features capable of tracking driver behavior in numerous of its vehicles. While touted as a means to enhance the driving experience, in reality JLR is, upon information and belief, surreptitiously recording a plethora of driver-behavior metrics and other personal data.  This includes, without limitation, transmission of computerized information such as acceleration events, hard brake events, high speed events, and distance, through the vehicles' internet/online collection and/or other types of the driver's personal data, including, among other things, music that is being played in the vehicle, the location of the vehicle, information from the driver's use of Bluetooth to make telephone calls and other personal information (hereafter "Customer Data").

5.      Not only that, but JLR also, upon information and belief, furnishes and/or sells some or all of the Customer Data to, *inter alia*, credit agencies and/or data-aggregation companies unbeknownst to drivers.

6.      These credit companies or data aggregators, in turn, upon information and belief, sell some or all of the Customer Data to, among others, automobile insurance companies who can and do use the data to increase quotes and premiums for drivers' automobile insurance. All of this occurs, for a profit, without drivers' full knowledge or consent.

2

7.      In sum, JLR is, upon information and belief, recording Customer Data without drivers' full knowledge and consent, then sharing and/or selling some or all of the Customer Data to, *inter alia*, credit or data-aggregator companies like LexisNexis Risk Solutions ("LexisNexis") without drivers' full knowledge and consent.  Those firms then sell some or all of the Customer Data to automobile insurance companies and other third parties without drivers' full knowledge and consent. The net result is every entity in this series of transactions is profiting from the sale of drivers' data, while drivers themselves not only do not see a penny from the sale of their own data, but often see their insurance quotes or premiums inexplicably go up.

8.      Plaintiffs Gail J. Hupper and William H. Wood ("Plaintiffs") are two of the many drivers exploited by JLR's data collection practices alleged herein.  Their JLR vehicle is capable of supporting tracking software and is, upon information and belief, collecting and transmitting some or all of their Customer Data without their full knowledge and consent.

9.       Plaintiffs bring this action for economic damages and injunctive relief on behalf of all persons whose Customer Data was captured, stored, and/or, upon information and belief, transferred or sold without  notice or consent. Defendant's wrongful conduct constitutes a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. (Count I), a violation of state consumer protection laws including Massachusetts General Laws Chapter 93A (Count II), tortious interference with drivers' relations with their automobile insurers (Count III), common law invasion of privacy (Count IV), and unjust enrichment (Count V).

## II.      JURISDICTION AND VENUE

10.      This Court has original jurisdiction pursuant to the 28 U.S.C. § 1331 by virtue of Count I arising out or relating to the FCRA. The Court also has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed

class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

11.     This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1407, and because Defendant has sufficient minimum contacts in Massachusetts, and because Defendant has otherwise intentionally availed itself of the markets within Massachusetts through business activities, such that the exercise of jurisdiction by this Court is proper and necessary.

12.     Venue is proper in this District because Plaintiffs reside in this District, 28 U.S.C. § 1391(b)(1); "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391(b)(2); and Defendant is subject to the personal jurisdiction of this Court, 28 U.S.C. § 1391(b)(3).

### III.     PARTIES

13.     Plaintiff Gail J. Hupper ("Ms. Hupper") resides in Watertown, Massachusetts. Ms. Hupper owns and drives a 2023 Land Rover Defender 110 (the "Vehicle") that was manufactured, marketed and/or sold by JLR and is capable of supporting driver tracking software or applications operated or maintained by Defendant.

14.      Plaintiff William H. Wood ("Mr. Wood") resides in Watertown, Massachusetts. Mr. Wood owns and operates the Vehicle with Ms. Hupper that was manufactured, marketed and/or sold by JLR and is capable of supporting driver tracking software or applications operated or maintained by Defendant.

15.     Defendant Jaguar Land Rover North America, LLC ("JLR or "Defendant") is a vehicle design, manufacturing, marketing, distribution and/or service company.  At all times material hereto, JLR was a Delaware Limited Liability Company with its principal place of

business at 100 Jaguar Land Rover Way, Mahwah, NJ 07495.  JLR sells, markets, leases, warrants, services, and repairs vehicles in the United States. At all times material hereto, JLR manufactured, marketed, leased and/or sold vehicles that included driver tracking software or applications.

## IV.   FACTUAL ALLEGATIONS

### A.   JLR's Surreptitious Tracking and Sharing of Customer Data

16.     JLR vehicles starting as early as 2014 models have the capability to use driver tracking software and related applications to collect some or all of the Customer Data.

17.     The software and applications allow JLR to record, store, and transmit data not just about vehicle condition (*e.g.*, engine or transmission status, etc.), but also driver behavior. As noted *supra*, among data collected are metrics such as average speed; the frequency and intensity of acceleration and braking; and late night driving -- all of this and more is capable of, and is, being digitally recorded, stored, and viewed through software applications.

18.     JLR does not adequately apprise drivers that some or all of their Customer Data will, upon information and belief, be collected, furnished and/or sold to third parties (without compensation to drivers), let alone sold to third parties who resell the data to automobile insurers resulting in higher insurance quotes or premiums (*see infra* Part IV.B).

19.     Nothing in JLR's disclosures provided to Plaintiffs and class members adequately discloses that it will furnish or sell some or all of the Customer Data to third parties, let alone to third parties which, in turn, provide that data to automobile insurance companies, resulting in higher insurance quotes or premiums.

20.     Plaintiffs and other class members suffered actual harm and the risk of future harm as a result of JLR's illicit activities, including but not limited to invasion of their privacy

interest in their own data, loss of control over their own data, the sharing and/or sale of their own data without compensation, and adverse credit reporting and impaired credit scores.

### B.       Plaintiffs' Purchase of the Vehicle

21.     On or around April 29, 2023, Ms. Hupper and Mr. Wood purchased a 2023 Land Rover Defender 110.  A few months after their purchase, a software update notice appeared on the Vehicle's dashboard screen.  The appearance of this notice, plus a second software update notice a few months later, made clear that the Vehicle was connected to the internet.

22.     The Vehicle's continuous software connections were not adequately disclosed in JLR's marketing materials.

23.     For example, JLR vehicles have an additional feature known as InControl, which is a "suite of services and applications that connects you to your vehicle and links you seamlessly with the outside world".  Purchasers and/or lessees have the option of subscribing to InControl at no charge for ninety days after the purchase and/or lease of their vehicle, and then for a fee of approximately $120 per year.

24.     Following the appearance of the software update notices, Ms. Hupper and Mr. Wood investigated JLR's (and other car manufacturers') practices concerning collection of customer driving data, including, without limitation, reviewing the Mozilla Foundation report dated September 6, 2023.  *See* Jen Caltrider et al., *It's Official: Cars are the worst product category we have ever reviewed for privacy*, Mozilla Foundation (Sept. 6, 2023), found at: https://foundation.mozilla.org/en/privacynotincluded/articles/its-official-cars-are-the-worst-product-category-we-have-ever-reviewed-for-privacy.  The Mozilla Foundation Report's investigation found, among other things, that:

> every car brand we looked at collects more personal data than necessary and uses that information for a reason other than to operate your vehicle and

manage their relationship with you ... They can collect super intimate
information about you -- from your medical information, your genetic
information … to how fast you drive, where you drive, and what songs you
play in your car -- in huge quantities.

* * *

… most (84%) of the car brands we researched say they can share your
personal data -- with service providers, data brokers, and other businesses
we know little or nothing about. Worse, nineteen (76%) say they can sell
your personal data.

25.     Plaintiffs' investigation also revealed, among other things, that many (if not most)

newer models of vehicles are collecting some or all of the Customer Data.  Some (if not all) of

the Customer Data is then shared and/or sold by the manufacturer to third parties, including,

without limitation, service providers, data brokers (*e.g.*, LexisNexis), and other businesses,

including auto insurance companies.  This information is used by certain of these data collection

companies to, *inter alia*, compile reports used by auto insurance companies to set rates and

premiums, all without the customers' knowledge or consent.

26.     Ms. Hupper and Mr. Wood communicated their concerns in connection with

JLR's data collection practices in their correspondence to JLR dated December 11, 2023.  In

their letter, they requested, among other things, that:

We be provided a clear and comprehensive accounting of the data our
vehicle has collected since we purchased it and who has had (or may yet
have) access to that data; and

Any future data collection be terminated.

27.     JLR responded by letter dated March 7, 2024.  Its letter did not deny that its

vehicles collect Customer Data or that it participated in the data collection and sharing and/or

selling practices alleged herein.  JLR also did not agree to cease collecting Plaintiffs' Customer

Data.

28.     In a M.G.L. c. 93A letter dated May 20, 2024, Plaintiffs requested JLR "provide

information and documents identifying (i) any and all Customer Data, including, without

limitation, driving telematic data, it collects from customers who have purchased or leased a vehicle from JLR in the past eight years; (ii) any third parties JLR has shared and/or sold Customer Data in the past eight years; and (iii) how much money or other consideration JLR has received from the sale of Customer Data, including, without limitation, driving telematic data, in the past eight years." JLR's response letter dated June 28, 2024, did not respond to this query nor did it deny that it was collecting, sharing and/or selling drivers' Customer Data and/or driving behavior data.

29.     Had Ms. Hupper and Mr. Wood been informed of JLR's data collection practices referenced above prior to their purchase of the Vehicle, this would have affected their purchasing decision, including, without limitation, not purchasing the Vehicle.

**C.     Fraudulent Concealment, Tolling, and Continuing Violations**

30.     Plaintiffs' and other class members' causes of action could not and did not accrue prior to the filing of this Complaint because Defendant actively concealed and did not reveal their improper tracking, accessing, recording, storing, furnishing and/or selling of some or all of the Customer Data.

31.     Plaintiffs and other class members exercised reasonable diligence but could not discover Defendant's wrongful conduct earlier.

32.     Because of this, Plaintiffs and other class members did not discover, nor could they have discovered through reasonable and ordinary diligence, Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Defendant's obfuscations lulled Plaintiffs and other class members into believing that some or all of their Customer Data was not being improperly accessed.

33.     Alternatively, any statute of limitations or prescriptive period is equitably tolled on account of fraudulent concealment. Defendant affirmatively concealed from Plaintiffs and other class members its unlawful conduct.

34.     Defendant's wrongful conduct and obfuscation constitute continuing violations for purposes of any limitations period.

## V.     CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Defendant on Plaintiffs' own behalf and on behalf of the Class(es) defined below, to the extent class members from these jurisdictions can be grouped together for purposes of class treatment, and within the applicable limitations periods:

> Class Definition:  All drivers whose JLR vehicles recorded some or all of the Customer Data and shared and/or sold some or all of the Customer Data with third parties.

36.     Excluded from the Class(es) are: (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and its employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns, and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

37.     Plaintiffs reserve the right to narrow or expand the foregoing class definition, or to create or modify subclasses, including state-specific subclasses, as the Court deems necessary.

38.     Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class(es).

39.     **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially many hundreds of thousands of

consumers nationwide. The Class(es) are therefore so numerous that joinder of all members is impracticable.

40.     **Commonality**: Common questions of law and fact exist as to all class members, including, but not limited to:

    a.    Whether JLR manufactured, marketed, leased and/or sold vehicles capable of supporting and/or equipped with software or applications capable of recording, storing, and transferring some or all of class members' Customer Data;

    b.    Whether JLR operated and maintained software or applications capable of recording, storing, and transferring some or all of class members' Customer Data;

    c.    Whether JLR used software or applications to record, store, and transfer some or all of class members' Customer Data;

    d.    Whether JLR recorded, stored, and transferred some or all of class members' Customer Data without full knowledge and consent;

    e.    Whether JLR furnished and/or sold some or all of class members' Customer Data to third parties;

    f.    Whether Defendant's conduct constitutes violations of the FCRA, consumer protection statutes, and common law principles against tortious interference, invasion of privacy, and unjust enrichment;

    i.    When Plaintiffs' and class members' causes of action accrued;

    j.    Whether Defendants fraudulently concealed Plaintiffs' and other class members' causes of action; and

k.      the amount and extent of damages to Plaintiffs and other class members,

and the scope of monetary and injunctive relief as to same.

41.     **Typicality**: Plaintiffs' claims are typical of other class members' claims. Plaintiffs and other class members all suffered the same type of economic harm. Plaintiffs have substantially the same interest in this matter as all other class members, and their claims arise out of the same set of facts and conduct as the claims of all other class members.

42.     **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in insurance and privacy litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of other class members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiffs have no disabling conflict with other class members and will fairly and adequately represent the interests of class members.

43.     The elements of Rule 23(b)(2) are met. Defendants acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief are appropriate respecting the Class(es) as a whole.

44.     The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely, or proper. Judicial resources would be unnecessarily depleted by resolution of

individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## VI.   CAUSES OF ACTION

### Count I : Violation Of Fair Credit Reporting Act, 15 U.S.C. § 1681, *Et Seq.*

45.   Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

46.   Plaintiffs allege this claim for relief on behalf of themselves and all similarly situated class members, both those in Massachusetts and those class members in other states the laws of which do not conflict with Massachusetts law.

47.   Plaintiffs and other class members are persons and consumers within the meaning of the FCRA.

48.   JLR's recording, storing, and, upon information and belief, furnishing and/or selling some or all of Plaintiffs' and other class members' Customer Data to third parties for purposes of credit reporting within the meaning of the FCRA, constitutes an impermissible purpose and use of data under the FCRA.

49.   JLR is liable for negligently and willfully violating the FCRA by, upon information and belief, acquiring, maintaining, accessing, furnishing and/or selling some or all of Plaintiffs' and other class members' Customer Data without permissible purpose or authorization under the FCRA.

50.    As a result of Defendant's wrongful conduct, Plaintiffs and other class members

have suffered damage, including but not limited to improper use of some or all of their Customer Data and wrongful impairment of credit.

### COUNT II: Violation Of Chapter 93A And
### Other State Consumer Protection Acts

51.    Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

52.    JLR has engaged in the conduct of trade or commerce in Massachusetts within the meaning of Chapter 93A, §2 and, upon information and belief, in every other state and territory of the United States.

53.    JLR has willfully or knowingly committed unfair or deceptive acts or practices in violation of M.G.L. c. 93A, §9 and other state consumer protection acts by, *inter alia*, collecting, sharing and/or selling some or all of Plaintiffs' and class members' Customer Data, which practices constitutes an unlawful invasion of the Plaintiffs' and class members' privacy rights by: (a) collecting some or all of their Customer Data in a manner that is highly offensive to a reasonable person; and (b) disclosing some or all of their Customer Data to unauthorized parties without the informed and clear consent of the Plaintiffs and members of the class.

54.    Plaintiffs allege this claim for relief on behalf of themself and all similarly situated class members, both those in Massachusetts and those in other states and/or U.S. territories, the laws of which do not conflict with Massachusetts law.

55.    JLR has violated the following consumer protection statutes in addition to M.G.L. c. 93A, §9 for the acts alleged herein:

> a.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;
>
> b.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq*.;

c.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq*.;

d.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq*.;

e.      Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq*.;

f.      Defendant violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.;

g.      Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

h.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq*.;

i.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq*.;

j.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq*.;

k.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq*.;

l.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq*.;

m.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq*.;

n.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

o.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

p.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq.*;

q.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

r.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq.*;

s.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

t.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

u.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

w.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

x.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

y.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

z.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

aa.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq.*;

bb.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

cc.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

dd.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ee.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

ff.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

gg.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

hh.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

ii.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

16

jj.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

kk.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

ll.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

mm.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

nn.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

oo.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*;

pp.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

qq.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

rr.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

ss.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

tt.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

uu.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

vv.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

ww.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

xx.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

yy.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

zz.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

aaa.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

56.     Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

57.     Defendant, directly or through its agents, employees, and/or subsidiaries, violated the state statutes by knowingly and intentionally accessing, recording, storing, furnishing and/or selling to third parties some or all of class members' Consumer Data without full knowledge or consent.

58.     Defendant's conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to Defendant's wrongful conduct. To the extent applicable,

Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances.

59.     As a direct and proximate result of Defendant's unfair methods of competition and/or unfair or deceptive acts or practices, Plaintiffs and other class members have suffered damages – an ascertainable loss – in an amount to be proved at trial. Defendant's conduct was material in class members' use or purchase of JLR vehicles. Absent Defendant's wrongful conduct, Plaintiffs and other class members would not have used or purchased JLR vehicles capable of supporting tracking software or applications, or, alternatively, would not have purchased on the same terms (*e.g.*, purchased vehicles for less), had they known the truth.

60.     Plaintiffs sent a demand letter to JLR on May 20, 2024, seeking relief for the conduct alleged therein.  JLR declined to make any reasonable offer to settle the claims asserted in the demand letter.

61.     Plaintiffs and the Class are entitled to damages, their reasonable attorneys' fees and costs pursuant to M.G.L. Chapter 93A and other state consumer protection acts.

## Count III: Tortious Interference

62.     Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

63.     Plaintiffs allege this claim for relief on behalf of themself and all similarly situated class members, both those in Massachusetts and those in other states, the laws of which do not conflict with Massachusetts law.

64.     Plaintiffs and other class members had contractual or quasi-contractual arrangements with automobile insurance companies.

65.     Defendant's wrongful accessing, recording, storing and, upon information and belief, furnishing and/or selling to third parties some or all of class members' Customer Data has interfered with class members' contractual or quasi-contractual arrangements with automobile insurance companies.

66.     Defendant intended to harm or interfere with class members' contractual or quasi-contractual arrangements with automobile insurance companies. There is no plausible purpose to share some or all of their Customer Data to credit reporting firms and other third parties who will knowingly share that data with automobile insurance companies than for that data to be used for the purpose of the transaction (which often was for a profit), viz., that the data will impact or interfere with the insurance quotes or premiums charged by automobile insurance companies to class members.

67.     No privilege or other justification exists to excuse Defendant's tortious interference as alleged herein.

68.     As result of Defendant's tortious interference, Plaintiffs and other class members were injured and suffered monetary or credit-related damages, as well as the increased likelihood of same in the future in amount to be proven at trial.

### Count IV: Invasion of Privacy

69.     Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

70.     Plaintiffs allege this claim for relief on behalf of themself and all similarly situated class members, both those in Massachusetts and those in other states, the laws of which do not conflict with Massachusetts law, including, without limitation, M.G.L. c. 214, § 1B.

71.     Plaintiffs and each other class member has a right or interest against improper intrusion. This includes a right or interest in the privacy of their own personal data, including

their Customer Data. Within the confines of a vehicle, consumers have a reasonable expectation of privacy and that their Customer Data is a private affair.

72.     Defendant unreasonably intruded upon class members' privacy interests by intentionally accessing, recording, storing and, upon information and belief, furnishing and/or selling some or all of class members' Customer Data. Defendant's conduct was highly offensive to a reasonable person, especially to the extent Defendant profited from the alleged sale of the surreptitiously obtained Customer Data.

73.     As a direct and proximate result of Defendant's offensive actions Plaintiffs and other class members have suffered damages – an ascertainable loss – in an amount to be proved at trial.

## Count V: Unjust Enrichment

74.     Plaintiffs incorporate herein the allegations contained in the preceding paragraphs.

75.     Plaintiffs allege this claim for relief on behalf of themselves and all similarly situated class members, both those in Massachusetts and those in other states, the laws of which do not conflict with Massachusetts law.

76.      Defendant was unjustly enriched at the expense of Plaintiffs and each other class member. JLR was unjustly enriched by selling or leasing JLR vehicles to class members which were capable of supporting or equipped with software or applications that have the ability to track some or all of the Customer Data. While the extent to which JLR might share or sell that data has not been fully disclosed, JLR was also unjustly enriched to the extent it used and/or sold some or all of class members' Customer Data to third parties without full knowledge and consent.

77.     Plaintiffs and each other class member conferred a direct benefit on JLR by using or purchasing JLR vehicles capable of supporting or equipped with software or applications that tracked some or all of their Customer Data. Plaintiffs and other class members also conferred a direct benefit on JLR through their Customer Data.

78.     Defendant profited from accessing, offering, furnishing and/or selling some or all of class members' Customer Data without full knowledge and consent, or with any financial consideration flowing to class members.

79.     Plaintiffs and each other class member were unjustly deprived of money or property obtained by Defendant's improper recording, storing, accessing and, upon information and belief, furnishing and/or selling some or all of class members' Customer Data. It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation obtained as a result of Defendant's wrongful conduct alleged herein.

80.     In the alternative to the other causes of actions alleged herein, Plaintiffs and other class members have no adequate remedy at law.

81.     Plaintiffs and each other class member are entitled to seek and do seek restitution from Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendant by virtue of its wrongful conduct alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following judgment:

A.     An order certifying this action as a class action;

B.     An order appointing Plaintiffs as Class Representatives and appointing undersigned counsel as Class Counsel to represent the Class;

C.      A declaration that Defendant JLR is liable pursuant to each and every one of the above-enumerated causes of action;

D.      An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant JLR described herein;

E.      Payment to Plaintiffs and class members of all damages, exemplary, treble or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including, but not limited to, the full amounts paid for JLR vehicles, the price differential for JLR vehicles with and without tracking software capability, the value of each class member's Customer Data, a refund (in whole or in part) of amounts paid by class members for JLR's InControl feature, and Defendant's ill-gotten gains;

F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.      An award of statutory damages to the extent available;

H.       Interest as provided by law, including, but not limited to, pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

## **JURY DEMAND**

Plaintiffs respectfully requests a trial by jury on all causes of action so triable.

Respectfully submitted,

Plaintiffs Gail J. Hupper and William H. Wood,

By their attorneys,

**ADKINS, KELSTON & ZAVEZ, P.C.,**

*/s/ John Peter Zavez*
John Peter Zavez, BBO #555721
Noah Rosmarin, BBO #630632
Brendan M. Bridgeland, BBO#648312
90 Canal Street, Fourth Floor
Boston, MA  02114
Phone (617) 367-1040
jzavez@akzlaw.com
nrosmarin@akzlaw.com
bbridgeland@akzlaw.com

***Counsel for Plaintiffs and the proposed class***

Dated:  August 9, 2024